# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL CHAU,<br><br>        Plaintiff,<br><br>v.<br><br>NATIONWIDE INSURANCE COMPANY OF AMERICA,<br><br>        Defendant. | Case No.: 16-CV-00927 W (NLS)<br><br>**ORDER GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION [DOC. 31]** |

Pending before the Court is Defendant Nationwide Insurance Company of America's summary-judgment motion. Plaintiff did not file an opposition. The Court decides the motion on the papers submitted, and without oral argument. See Civ.L.R. 7.1.d.1. For the reasons that follow, the Court **GRANTS** Defendant's motion [Doc. 31].

**I. FACTUAL BACKGROUND**

Defendant Nationwide Insurance Company of America ("Nationwide") issued a Personal Automobile Insurance Policy, number PPNC0018472958-0 (the "Policy"), to Plaintiff Paul Chau for the period January 8, 2007 to July 8, 2007. (*Gutierrez Decl.* [Doc. 35-3] Ex. A.) The Policy provides underinsured motorist ("UIM") coverage with limits

1

of $500,000 per accident.  (*Id.*)  The Policy also provides that in the event the insured and insurer disagree on the value of a claim, either party can demand binding arbitration.  (*Id.*)

Chau sustained injuries in a motor vehicle accident on May 16, 2007, while driving a vehicle owned by his friend, Lana Lee.  (*Compl.* [Doc. 1-2[1]] ¶ 8.)  On December 21, 2007, Nationwide assigned Chau's claim to adjuster Gina Milone.  (*Milone Decl.* [Doc. 35-2] ¶ 2.)  Shortly after being assigned, Milone contacted Lee and requested a face-to-face meeting with her and Chau to obtain information about Chau's injuries, and to obtain a signed medical authorization form.  (*Id.* ¶ 3.)  They initially agreed to meet on January 4, 2008, but Lee later asked to reschedule the meeting.  (*Id.*)

Over the next few weeks, the meeting was repeatedly rescheduled by Lee and/or Chau.  (*Milone Decl.* ¶ 3.)  Because of the difficulty arranging the meeting, Milone asked Chau's insurance agent, Tom Thi, for assistance.  (*Id.* ¶ 4.)  On February 16, 2008, Milone, Chau, Lee, and Thi met, and Chau claimed doctors informed him that he would need three surgeries for compression injuries in his neck.  (*Id.*)  Milone then issued a check to Chau for $5,000, the Policy's medical-payments coverage limit.  (*Id.*)  She also explained to Chau that he would need to exhaust the liability limit of the adverse driver's insurance policy before pursuing an underinsured motorist claim with Nationwide.  (*Id.*)  Milone then handed Chau a medical authorization form, and explained that he needed to complete and return the form so she could obtain the information needed to evaluate a UIM claim.  (*Id.*)

After the meeting, Milone contacted the adverse driver's insurance provider, State Farm, and learned that the policy limit was significantly lower than Chau's limits.  (*Milone Decl.* ¶ 5.)  Milone, therefore, concluded that Chau would eventually make a UIM claim to Nationwide.  (*Id.*)

---

[1] The Complaint is attached to the Notice of Removal [Doc. 1] as Exhibit A.

2

Beginning on March 4, 2008, Milone made repeated phone calls to Chau, Lee, and Thi to check on the status of Chau's claim with State Farm and the return of the medical authorization form. (*Milone Decl.* ¶¶ 6–7.) On May 5, she finally spoke with Chau, who stated that his claim with State Farm was still pending and that he was in the process of obtaining information to send her. (*Id.* ¶8.) Having received nothing, on May 22 and 28, Milone telephoned and left voicemail messages for Chau and Lee regarding the medical authorization. (*Id.*) Additionally, she made two "cold call" visits to the address listed on Chau's Policy, and left a letter for Chau requesting that he call to discuss the medical authorization, his medical records and status of his claim. (*Id.* ¶9.)

In June, Milone left more message for Chau and Lee, and made additional "cold call" visits to alternate addresses she found for Chau and Lee, all to no avail. (*Milone Decl.* ¶ 10.) On June 13, 2008, Milone hired a private investigator, who unsuccessfully attempted to locate a valid address for Chau. (*Id.*) Finally, on July 17, 2008, Thi informed Milone that he received Chau's medical authorization form and some medical records. (*Id.* ¶ 12.)

When Milone picked up the medical authorization form, she found that it restricted her from accessing medical and insurance records predating the accident. (*Milone Decl.* ¶ 12, Ex. A.) The records provided stated that Chau had been diagnosed with a disc degenerative change with cervical canal stenosis at C4–C5 and C5–C6. (*Id.* ¶ 12, Ex. B.) However, the records also indicated that before the accident, Chau already suffered from "higher neck pains and had C4–C5 disk issues" and that "surgery was contemplated and discussed." (*Id.*) The records also included $113,000 in invoices for home-care services provided by an individual named Han Lee. (*Id.*)

Milone promptly forwarded Chau's records for review by a registered nurse employed with Nationwide. (*Milone Decl.*, ¶ 13.) The nurse prepared a report, which noted, among other things, that Chau's claim required further investigation based on (1) records suggesting his medical conditions pre-existed the accident, (2) questionable invoices for Han Lee's home-care services, and (3) inconsistent medical records relating

3

to Chau's recovery. (*Id.*, Ex. C.) Accordingly, on July 29, 2008, Milone sent a letter to Chau requesting a medical authorization for five years before the accident to determine how much of Chau's post-accident diagnosis was related to his pre-accident condition. (*Id.* ¶ 14.) The letter also requested more information about Han Lee's home-care services. (*Id.* Ex. E.)

In August and October 2008, Milone telephoned Chau and Lana Lee to follow-up on the request for pre-accident medical information. (*Milone Decl.* ¶¶ 16–17.) Lee eventually returned Milone's call, and stated that Chau would not provide a pre-accident medical authorization. (*Id.* ¶ 17.) In response, Milone sent Chau a letter citing the Policy's cooperation provision, which requires a person seeking coverage to cooperate with Nationwide's investigation, and authorize Nationwide to obtain "medical reports" and "other pertinent records." (*Id.* ¶ 18, Ex. E.)

In early December 2008, Nationwide Claims Manager Laura Gutierrez received additional post-accident medical records from Chau, as well as a report from a physician's employee who claimed seeing Chau in September 2008 walking without a cervical neck collar or brace. (*Gutierrez Decl.* [Doc. 35-3] ¶ 9, Ex. E.) This report prompted Gutierrez to ask for surveillance to further investigate Chau's claim, but the investigative team was unable to locate Chau during the months of January and February 2009. (*Id.* ¶ 9.) On February 19, 2009, in order to "move the claim along," Gutierrez authorized Milone to offer Chau a $40,000 settlement, which he declined. (*Id.* ¶ 10.)

On May 13, 2009, Milone telephoned Lana Lee, who Chau had designated as his representative with respect to the claim, and reminded her that the deadline for Chau to demand arbitration under the Policy was May 16, 2009. (*Milone Decl.* ¶ 19.) Chau demanded arbitration the next day. (*Id.*)

Timothy Lucas, who represented Nationwide in the arbitration proceeding, sent Chau a letter requesting his mailing address and further contact information. (*Lucas Decl.* [Doc. 35-4] ¶¶ 2, 3, Ex. A.) Chau did not respond to the letter and on June 11, 2009, Nationwide filed a petition in the San Diego Superior Court to establish a court file

4

relating to the arbitration. (*Id.* ¶ 4.) On June 16, 2009, Nationwide began requesting discovery. (*Lucas Decl.* ¶ 5.) Over the course of the next four years, Nationwide encountered repeated delays in obtaining discovery responses and setting the depositions of Chau and Lee. (*Martin Decl.* [Doc. 31-2], Ex. A at ¶¶ 3, 5, 9, 10, 13, 14, 17–19, 22, 23.) Chau's deposition was finally taken over the course of two days, on November 15, 2011 and February 9, 2012, and Lana Lee's deposition was taken on March 29, 2013, after Nationwide filed a successful motion to compel her deposition. (*Id.*, Ex. A at ¶¶ 6, 14, 27, 28.)

In May 2013, Chau and Nationwide agreed to participate in a confidential mediation session before retired Judge James Milliken. (*Martin Decl.*, Ex. A at ¶ 29.) The mediation took place on June 14, 2013. (*Id.*) On July 3, 2013, Nationwide tendered a check for $450,000 to Chau and his counsel. (*Id.*; *Ryan Decl.* [Doc. 31-4] ¶ 9.)

On July 9, 2015, Chau filed this lawsuit against Nationwide in the San Diego Superior Court. (*See Compl.*) The Complaint asserts causes of action for breach of the Policy and bad faith. The causes of action are based on the theory that Nationwide unreasonably delayed in paying the UIM benefits. (*See Compl.* ¶¶ 13, 19.)

On April 18, 2016, Nationwide removed the case to this Court. (*See Notice of Removal* [Doc. 1].) On June 16, 2017, Nationwide filed the present summary-judgment motion. Plaintiff has not filed an opposition.[2]

---

[2] When Nationwide filed the present motion, Chau was represented by the same attorney who represented him in the state-court petition and arbitration. (*See Martin Dec.* Ex. A at ¶¶ 1, 29; *Compl.*) However, Chau's attorney filed a motion to withdraw as counsel in this case, which was granted on August 8, 2017 (*see order* [Doc. 48]). Before the motion to withdraw was granted, Nationwide's summary-judgment motion was continued (*see order* [Doc. 41]) and then vacated (*see order* [Doc. 45]) pending resolution of the withdrawal motion. On August 9, 2017, after the withdrawal motion was granted, this Court issued a new briefing schedule on Nationwide's motion, which gave Chau an additional 4 weeks to file an opposition (*see order* [Doc. 49]).

5

## II. APPLICABLE LAW

### A. Summary judgment standard

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Id. at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159–60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot avoid summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." In re Citric Acid Litig., 191 F.3d 1090, 1094 (9th Cir. 1999) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) (citing Anderson, 477 U.S. at 252) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories,

6

and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Ford Motor Credit Co. v. Daugherty, 279 Fed. Appx. 500, 501 (9th Cir. 2008) (citing Celotex, 477 U.S. at 324). Additionally, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587.

### B. California insurance law

The law implies in every contract, including insurance policies, a covenant of good faith and fair dealing. Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713 (2007). "To fulfill its implied obligation, an insurer must give at least as much consideration to the interests of the insured as it gives to its own interests… when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort." Frommoethelydo v. Fire Ins. Exchange, 42 Cal. 3d 208, 214–215 (1986). "The covenant [of good faith] is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." Brehm v. 21st Century Ins. Co., 166 Cal. App. 4th 1225, 1235 (2008) (*quoting* Waller v. Truck Ins. Exchange, Inc. 11 Cal. 4th 1, 36 (1995)). A "'breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself'" – " '[b]ad faith implies unfair dealing rather than mistaken judgment." Chateau Chamberay Homeowners Ass'n v. Associated Intern. Ins. Co., 90 Cal. App. 4th 335, 345 (2001) (*quoting* Congleton v. National Union Fire Ins. Co., 189 Cal. App. 3d 51, 59 (1987)).

"An insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." Wilson v. 21st Century Ins. Co., 42 Cal. 4th at 1088-89 (quoting Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co., 90 Cal. App. 4th at 347.) However, the "genuine dispute" rule does not absolve an insurer of the

7

obligation to fairly investigate, process, and evaluate an insured party's claim – a genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds. Chateau Chamberay, 90 Cal. App. 4th at 348–349. The reasonableness of the insurer's decisions and actions is evaluated based on the time that they were made, and not based on subsequent events which may provide more evidence of insurer error. Chateau Chamberay, 90 Cal. App. 4th at 347 (*quoting* Filippo Industries, Inc., v. Sun Ins. Co., 74 Cal. App. 4th 1429, 1441 (1999)). "The genuine issue rule in the context of bad faith claims allows a…court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable." Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 724 (2007) (*quoting* Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1161-62 (9th Cir. 2002)).

### III. DISCUSSION

#### A. Breach of Contract.

The first issue in Nationwide's summary-judgment motion is whether it breached the Policy. Defendant argues that since the full policy limit was paid, there can be no breach of contract. (*Def. P&A* [Doc. 31-1] 10:21–11:7.) For the reasons that follow, the Court agrees.

Under California law, a breach of contract claim requires (1) the existence of a contract, (2) plaintiff's performance of his/her contractual duties, (3) defendant's breach, and (4) plaintiff's damages resulting from the breach. Gentry v. State Farm Mut. Auto. Ins. Co., 726 F. Supp. 2d 1160, 1171 (E.D. Cal. 2010). If an insurance company pays the full amount of an arbitration award and the underinsured motorist ("UIM") policy limit, "it cannot be liable for breach of contract." Holenda v. Infinity Select Ins. Co., 2014 WL 559381, at *3 (C.D. Cal., Feb. 13, 2014) (citing Paulson v. State Farm Mut. Auto. Ins. Co., 867 F. Supp. 911, 917–918 (C.D. Cal. 1994) (holding plaintiff's breach of contract claim was not viable since the insurer paid the policy's underinsured motorist limits).

8

Here, it is undisputed that shortly after the mediation with Judge Miliken, Nationwide tendered it $450,000 policy limit to Chau. (*Ryan Decl.* [Doc. 31-4] ¶ 9.) Since Nationwide tendered the full amount of its UIM policy limit to Chau, Nationwide is not liable for breach of contract and is entitled to summary judgment on the breach of contract cause of action.

### B. Bad faith.

Plaintiff's bad-faith claim is based on the theory that Nationwide unreasonably delayed in paying the UIM claim. (*Compl.* [Doc. 1-2] ¶ 19–22.) Nationwide argues it reasonably investigated the claim and did not unreasonably delay paying benefits to Chau. (*Def. P&A* 11:21–14:8.)

Generally, there are two separate requirements to establish breach of the implied covenant of good faith and fair dealing: "(1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." Love v. Fire Ins. Exchange, 221 Cal. App. 3d, 1136, 1151 (1990). Delayed payments because of "'inadequate or tardy investigations' and 'oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable' may also breach the implied covenant." Gentry v. State Farm Mut. Auto Ins., 726 F. Supp. 2d at 1166. But a withholding is considered reasonable if "the insurer conducted a 'thorough and fair' investigation, after which there remained a 'genuine dispute' as to coverage liability." Gentry v. State Farm Mut. Auto Ins, 726 F. Supp. 2d 1160, 1166 (2010) (*quoting* Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 720 (2007.))

Here, the undisputed facts establish that Nationwide conducted a reasonable investigation under the circumstances, and any delay in paying the benefits was due to Chau's conduct. As addressed in detail above, after the accident, Milone struggled to set the initial meeting with Chau and Lee. After the meeting, Milone then encountered more problems obtaining information about the status of Chau's claim with State Farm, and the

9

medical authorization. The limited records Chau eventually provided raised issues concerning the extent to which Chau's injuries may have involved conditions that existed before the accident. Chau, however, refused Nationwide's repeated attempts to obtain records from before the accident, in contravention to his obligation under the Policy to cooperate. Then after requesting arbitration, Chau continued to delay in responding to Nationwide's discovery requests, even requiring Nationwide to file a motion to compel Lee's deposition, which was necessary to obtain information related to Han Lee's invoices. In short, based on the undisputed evidence, there is no evidence that Nationwide unreasonably delayed paying Chau the UIM benefits. Accordingly, summary-judgment is appropriate as to Chau's bad-faith claim.

### C. Attorney's Fees.

Nationwide argues Chau cannot recover attorney's fees because there are no additional Policy benefits to recover. (*Def. P&A* 15:18–21.) In an action where an insurer tortiously withholds benefits, attorneys' fees are recoverable as an element of the damages resulting from such tortious conduct. Brandt v. Superior Court, 37 Cal. 3d 813, 817 (1985).

Here, however, Nationwide paid the UIM policy limit after a several year delay overwhelmingly attributable to Chau's conduct. There are no Policy benefits left to recover. Accordingly, Chau is not entitled to recover attorneys' fees.

### D. Damages.

Nationwide argues Chau is not entitled to punitive damages. (*Def. P&A* 15:23–24.) "A consistent and unremedied pattern of egregious insurer practices" must be present for an insurer's "bad faith" conduct to warrant punitive damages. Mock v. Michigan Millers Mutual Ins. Co., 4 Cal. App. 4th 306, 329 (1992) (*quoting* Patrick v. Maryland Cas. Co., 217 Cal. App. 3d 1566, 1576 (1990)). Because Nationwide acted reasonably in investigating Chau's claim, Chau is not entitled to punitive damages.

1. **IV. CONCLUSION & ORDER**

For the reasons set forth above, the Court **GRANTS** Nationwide's summary-judgment motion [Doc. 31].

**IT IS SO ORDERED.**

Dated: December 12, 2017

Hon. Thomas J. Whelan
United States District Judge